**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| GARY PETTERSON, | 3:08-cv-00681-ECR (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| JAMES BENEDETTI, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. #22.)[1] Plaintiff has opposed (Doc. #24), and Defendants have replied (Doc. #27). After a thorough review, the court recommends that Defendants' Motion for Summary Judgment be granted in part and denied in part.

## I. BACKGROUND

At all relevant times, Plaintiff Gary Petterson was in the custody of the Nevada Department of Corrections (NDOC). (Defs.' Mot. for Summ. J. 2 (Doc. #22).) Plaintiff is currently an inmate at the Lovelock Correctional Center (LCC); however, the allegations set forth in Plaintiff's complaint pertain to events taking place when he was as an inmate at the Northern Nevada Correctional Center (NNCC). (Pl.'s Second Am. Compl. 1 (Doc. #6).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are James Benedetti, NNCC Warden; Don Helling, NDOC Deputy Director; Correctional Officer

---

[1] Refers to court's docket number.

Juliette Roberson;[2] and Correctional Officer Michael Hossak. (*Id.* at 3; Defs.' Mot. for Summ. J. 1 (Doc. #22).) On April 29, 2009, Plaintiff filed an amended complaint seeking declaratory relief and damages.[3] (Pl.'s Second Am. Compl. 23.)

In Count I, Plaintiff claims that Defendants deliberately disregarded a substantial risk of serious harm in violation of the Eighth Amendment by referring, or allowing others to refer, to Plaintiff and his cellmate as confidential informants. (*Id.* at 8-10.)

In Count II, Plaintiff alleges that Defendants forced him into protective segregation and subjected him to disciplinary conditions for two months in violation of the Fourteenth Amendment right to due process. (*Id.* at 12-19.)

## **II. LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary

---

[2] Plaintiff names "C/O Robbinson" as a Defendant in his complaint. (Pl.'s Am. Compl. 2.) However, subsequent filings indicate that this Defendant's correct name is "Julliette Roberson." (Doc. #12, 13.)

[3] Defendants note that Plaintiff's amended complaint (Doc. #4) was screened by the court (Doc. #5) and resulted in the dismissal of certain claims. (Defs.' Mot. for Summ. J. 2 n. 1.) According to Defendants, Plaintiff never filed a second amended complaint. (*Id.*) Defendants are incorrect. Plaintiff filed his second amended complaint on April 29, 2009. (Doc. #6.) The court recognizes that Plaintiff's entitling of this complaint as merely an "amended" complaint may have led to some confusion. Nevertheless, Defendants' reliance on the screening order in support if their arguments is misplaced because Plaintiff's second amended complaint (Doc. #6) supersedes the screening order.

judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

/ / /
/ / /
/ / /

3

### III. DISCUSSION

**A.   COUNT I**

Plaintiff claims that Defendant Roberson deliberately disregarded a substantial risk of serious harm in violation of the Eighth Amendment by referring to Plaintiff and his cellmate as confidential informants. (Pl.'s Second Am. Compl. 8-10.) Plaintiff alleges that Defendant Hossak condoned Defendant Roberson's behavior even though he did not personally accuse Plaintiff of being a "rat." (*Id.* at 10.) Plaintiff alleges that Defendants Benedetti and Helling deny the incident ever happened. (*Id.*)

Defendants contend that Plaintiff fails to show that he faced a substantial risk of serious harm. (Defs. Mot. for Summ. J. 5.) Defendants argue that because Plaintiff was never physically attacked and cannot point to any specific, identifiable threats made by any particular inmate, he never actually faced a risk of substantially serious harm. (*Id.* 5-6.) Furthermore, Defendants argue that Plaintiff fails to show they acted with deliberate indifference. (*Id.* 6-7; Defs.' Reply 3 (Doc. #27).)

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 833. However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. To establish an Eighth Amendment violation, a prisoner must show that (1) the deprivation alleged is "objectively, sufficiently serious," and (2) prison

4

1  officials were "deliberately indifferent" to serious threats to the inmate's safety. *Id*; *Hearns v.*
2  *Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). "Deliberate indifference entails something more
3  than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very
4  purpose of causing harm or with knowledge that harm will result." *Hearns*, 413 F.3d at 1040
5  (quoting *Farmer*, 511 U.S. at 835). A prison official must "[know] of and [disregard] an
6  excessive risk to inmate . . . safety; the official must both be aware of facts from which the
7  inference could be drawn that a substantial risk of serious harm exists, and he must also draw
8  the inference. " *Farmer*, 511 U.S. at 837. To show a prison official's knowledge of the risk, a
9  prisoner may rely on circumstantial evidence arising from the "very fact that the risk was
10 obvious." *Id*. at 842. "Mere negligence is not sufficient to establish liability." *Frost*, 152 F.3d
11 at 1128. Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2)
12 proving they "responded reasonably to the risk, even if the harm ultimately was not averted."
13 *Farmer*, 511 U.S. at 844.

14       1.    Sufficiently Serious Risk of Harm

15 In viewing the facts in the light most favorable to Plaintiff, the court finds that Plaintiff
16 raises a genuine issue of material fact as to whether he faced an objectively sufficiently serious
17 risk of harm. In *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989), the Ninth
18 Circuit reversed a district court's grant of summary judgment where a prisoner produced
19 evidence that tended to show that prison officers called him a "snitch" in front of other inmates
20 in order to subject him to life-threatening retaliation by other inmates. The court held that
21 whether the officers called the prisoner a "snitch" in the presence of other inmates is "'material'
22 to a section 1983 claim for denial of the right not to be subjected to physical harm by employees
23 of the state acting under color or law." *Id*. Although not stated explicitly, the court's holding
24 in *Valandingham* suggests that a prison officer calling an inmate a "snitch" in front of other
25 inmates, if proven true, amounts to an objectively serious risk of harm. In this case, according
26 to Plaintiff, on February 23, 2008, Defendant Roberson accused Plaintiff and his "cellie" of
27
28     5

being "rats" loud enough for the entire unit to hear her. (Pl.'s Second Am. Compl. 8.) Plaintiff claims that on February 24, 2008, "one of the more violent inmates" on the tier asked Defendant Roberson to identify the "rats" that she was talking about the day before. (Defs.' Mot. for Summ. J. Ex. D MSJ 022.) In response, Plaintiff states that Defendant Roberson pointed up at his cell and said "those are the rats." (*Id.* Ex. D MSJ 024.) Plaintiff alleges that although he was never physically attacked, he was aware of comments that other inmates would "take care of [him]." (*Id.* Ex. D MSJ 025-026.) According to Plaintiff, he stopped going out to the yard at NNCC because of the potential harm he would face if he did so. (*Id.* Ex. D MSJ 025.) Plaintiff was transferred from NNCC to LCC on March 4, 2008. (*Id.* Ex. D MSJ 028.)

Defendants do not dispute Plaintiff's version of events. (Defs.' Mot. for Summ. J. 5-6.) Rather, they argue that Plaintiff did not face a serious risk of harm because he was never physically attacked and he is unable to specify which particular inmate threatened him. (*Id.* at 6.) The court is not persuaded by Defendants arguments. First, a prisoner is not required to "await a tragic event such as an actual assault before obtaining relief." *Farmer*, 511 U.S. at 845 (internal modifications omitted). Second, even though Plaintiff is unable to specify precisely which inmates commented that they would "take care of him," the fact remains that Plaintiff was threatened and was put in enough fear for his safety that he stopped going to the yard at NNCC before his transfer to LCC. Additionally, Plaintiff recognized the inmate who asked Defendant Roberson to identify the "rats" as an inmate known to be violent. In viewing the facts and drawing all inferences in Plaintiff's favor, as the non-moving party, Plaintiff establishes a genuine issue of material fact as to whether he faced an objectively sufficiently serious risk of harm.

2. <u>Deliberate Indifference</u>

Defendants argue that Plaintiff fails to show that they acted with deliberate indifference. (Defs.' Mot. for Summ. J. 6-7; Defs.' Reply 2-3.)

/ / /

6

With respect to Defendant Roberson, Plaintiff raises a genuine issue of material fact as to whether she knew of and disregarded an excessive risk to Plaintiff's safety. Plaintiff alleges that Defendant Roberson referred to Plaintiff and his cellmate on two occasions as "rats." On the second occasion, Plaintiff claims Defendant Roberson did so in response to an inquiry from an inmate known to be violent. Courts have recognized the grave implications of being known as an informant in prison. *Miller v. Leathers*, 913 F.2d 1085, 1088 n.* (4th Cir. 1990) ("[i]t is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'"); *Thomas v. District of Columbia*, 887 F. Supp. 1, 4 (D.D.C. 1995) ("one can think of few acts that could be more likely to lead to physical injury [to an inmate] than spreading rumors of . . . informing"). According to the Eighth Circuit, "given the clear weight of authority in the circuits that have ruled on the question, [an officer is on] fair notice that to falsely label an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates." *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008). Moreover, "who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population." *Id*. In this case, Plaintiff alleges that Defendant Roberson affirmatively placed him in harm's way by referring to him as a "rat" on two occasions. Plaintiff raises a genuine issue of material fact as to whether Defendant Roberson was aware of the obvious danger associated with an inmate's reputation as an informant and disregarded that risk.

As to Defendant Hossak, Plaintiff raises a genuine issue of material fact as to whether he acted with deliberate indifference. A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally

7

required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Here, Plaintiff states that Defendant Hossak did not personally make any comments but that Defendant Hossak was present when Defendant Roberson first referred to him as a "rat." (Defs.' Mot. for Summ. J. Ex. D MSJ 035-036.) Plaintiff states that Defendant Hossak: (1) refused to provide him an "emergency grievance" at the time of the incident; and (2) told Plaintiff after the incidents "so what; you know, if it's true, it's true; if it's not, so what." (*Id*. Ex. D MSJ 025, 053.) Under the Eighth Amendment, Defendant Hossak has a duty to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 833. In viewing the facts in the light most favorable to Plaintiff, Plaintiff shows that Defendant Hossak failed to protect Plaintiff from a serious risk of harm of which he had knowledge.

As to Defendants Benedetti and Helling, Plaintiff fails to show that they knew of a substantial risk of serious harm to Plaintiff's safety. On March 6, 2008, Tony Corda sent a memorandum to Defendant Benedetti to which he attached the grievance Plaintiff filed regarding Defendant Roberson allegedly calling him a "rat." (Defs.' Mot. for Summ. J. Ex. D MSJ 060.) Plaintiff was transferred from NNCC to LCC on March 4, 2008 – two days before Defendant Benedetti received the memorandum. Because Defendant Benedetti was not aware of the risk to Plaintiff's safety at the time it occurred, he could not have acted with deliberate indifference. Similarly, Plaintiff did not submit his second level grievance to Defendant Helling until July 2008. (*Id*. Ex. D MSJ 061.) Like Defendant Benedetti, Defendant Helling was not aware of the risk to Plaintiff's safety at the time it occurred and could not have acted with deliberate indifference.

Furthermore, to the extent Plaintiff alleges that Defendants Benedetti and Helling are liable because they are supervisors, Plaintiff fails to adequately establish a causal link. Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. When a named defendant holds a supervisory position,

the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). Plaintiff must allege facts indicating that a supervisory defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, Plaintiff fails to show that Defendants Benedetti and Helling participated in calling Plaintiff a "rat," had knowledge that Plaintiff had been called a "rat" by a correctional officer, or promulgated or implemented a policy that is the "moving force behind" the constitutional violation. Therefore, Defendants Benedetti and Helling are entitled to summary judgment on Count I.

**B.    COUNT II**

Plaintiff claims that Defendants forced him into protective segregation and subjected him to disciplinary conditions for two months in violation of the Fourteenth Amendment right to due process. (Pl.'s Second Am. Compl. 12-19.)[4] According to Plaintiff, while in protective custody, (1) he was unable to access chapel services; (2) he was limited to nine hours per week of yard time; (3) he had no freedom of movement; (4) he could only access the showers every forty-eight to seventy-two hours; (5) he lost the ability to earn work credits; and (6) he was unable to use the telephone system as described in the NDOC administrative regulations. (*Id.* at 15-16.) Additionally, Plaintiff alleges that he should have been transferred to LCC within "a week or two" instead of remaining in protective custody for two months. (*Id.* at 14.)

///

---

[4] Plaintiff clarifies in his opposition that he "had no complaint with the initial placement into protective [segregation]" but continues to challenge the conditions in protective segregation and Defendants' failure to transfer him to LCC at an earlier time. (Pl.'s Opp'n to Summ. J. 2 (Doc. #24).)

9

1.    <u>Procedural Due Process</u>

To state a cause of action for deprivation of procedural due process, a plaintiff must first establish a liberty interest for which the protection is sought. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Liberty interests can arise both from the Constitution and from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). First, under the Constitution itself, a liberty interest is implicated when the conditions of confinement "[exceed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).) Here, Plaintiff was placed in protective custody from January 17, 2008 to March 4, 2008. (Defs.' Mot. for Summ. J. Ex. D MSJ 009.) The court concludes that the forty-nine days Plaintiff spent in protective custody does not exceed his sentence in such an "unexpected manner" to give rise to a liberty interest under the Due Process Clause itself. The Due Process Clause does not confer a liberty interest in being confined in the general prison population instead of administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). Furthermore, the court finds that the delay in transferring Plaintiff from NNCC to LCC does not give rise to a liberty interest. The Due Process Clause does not grant prisoners a liberty interest in staying at a particular institution. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Therefore, Plaintiff fails to establish a liberty interest arising under the Due Process Clause of its own force.

Second, liberty interests created by the state are generally limited to freedom from restraint that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine whether a restraint imposes "atypical and significant hardship," a court considers a condition or a combination of conditions or factors on a case by case basis, rather than invoking a single standard. *Serrano*, 345 F.3d at 1078. Three factors guide this inquiry: "(1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative

segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id.* (citing *Sandin*, 515 U.S. at 486-87; *Keenan v. Hall*, 84 F.3d 1083, 1089 (9th Cir. 1996)) (quotations omitted).

Here, as to the first factor, Plaintiff does not allege that the conditions of his confinement in protective segregation differed from those imposed on other inmates in administrative segregation and protective custody. As to the second factor, Plaintiff alleges that Defendants placed him in protective custody for forty-nine days – almost two months. In addition to this relatively short duration, Plaintiff alleges a minimal degree of restraint imposed on him by Defendants compared to the restraint imposed on general population inmates. Plaintiff claims: (1) he was unable to access chapel services; (2) he was limited to nine hours per week of yard time; (3) he had no freedom of movement; (4) he could only access the showers every forty-eight to seventy-two hours; and (5) he was unable to use the telephone system as described in the NDOC administrative regulations. (Pl.'s Second Am. Compl. 15-16.) As to the third factor, Plaintiff claims that he lost the ability to earn work credits and reduce the time of his incarceration. (*Id.* at 16.) Although Plaintiff may have been able to earn good-time credits while in the general population that would have shortened his sentence, his ability to do so successfully is too speculative to demonstrate inevitability. Thus, all three factors weigh against finding that Plaintiff's confinement in protective segregation amounted to an "atypical and significant hardship." Because Plaintiff is unable to establish a liberty interest, Defendants are entitled to summary judgment on Plaintiff's due process claim.

   2. <u>Substantive Due Process</u>

Plaintiff alleges that Defendant Benedetti violated Plaintiff's right to substantive due process by failing to ensure that Plaintiff was transferred from NNCC to LCC "within a week or two." (Pl.'s Second Am. Compl. 14.)

11

1    Substantive due process protects individuals from arbitrary and unreasonable
2 government action which deprives any person of life, liberty, or property. *Kawaoka v. City of*
3 *Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994). To establish a substantive due process
4 violation, the government's action must be shown to be "clearly arbitrary and unreasonable,
5 having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa*
6 *Lake Owners v. Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting *Village of Euclid v.*
7 *Ambler Realty Co.*, 272 U.S. 365, 395 (1926)); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir.
8 1988). "[C]onduct intended to injure in some way unjustifiable by any government interest is
9 the sort of official action most likely to rise to the conscience-shocking level." *County of*
10 *Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)(citing *Daniels v. Williams*, 474 U.S. at 331
11 ("Historically, this guarantee of due process has been applied to *deliberate* decisions of
12 government officials to deprive a person of life, liberty, or property") (emphasis in original)).
13 However, "[w]hether the point of the conscience-shocking is reached when injuries are
14 produced with culpability falling within the middle range, following from something more than
15 negligence but less than intentional conduct, such as recklessness or gross negligence . . . is a
16 matter for closer calls." *Id*.

17    Here, Plaintiff fails to show that Defendant Benedetti's actions rise to the level necessary
18 to substantiate a substantive due process claim. The court concludes that the forty-nine days
19 Plaintiff spent in protective custody at NNCC before being transferring to LCC was not "clearly
20 arbitrary and unreasonable." Therefore, Defendant Benedetti is entitled to summary judgment
21 on Plaintiff's substantive due process claim.
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27
28                              12

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** in part and **DENYING** in part Defendants' Motion for Summary Judgment (Doc. #22) as follows:

- Summary Judgment should be denied as to Defendants Roberson and Hossak with respect to Count I.
- Summary Judgment should be granted as to Defendants Benedetti and Helling with respect to Count I.
- Summary Judgment should be granted as to all Defendants with respect to Count II.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: August 9, 2010.

_____
UNITED STATES MAGISTRATE JUDGE